# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : 3:17-CR-158 |
| | : (JUDGE MARIANI) |
| DONALD ROYCE, | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is the Government's Motion to Disqualify Attorney Murdoch Walker as Counsel for Defendant. (Doc. 14). Defendant, Donald Royce, is charged with one count of mail fraud in violation of 18 U.S.C. § 1341 and eight counts of aiding in the preparation of false income tax returns in violation of 26 U.S.C. § 7206(2). (Doc. 1). On May 30, 2017, pursuant to Local Rule 83.8.2.1, Attorney Walker petitioned for special admission to practice before this Court. (Doc. 7). On June 2, 2017, this Court granted Attorney Walker leave to appear *pro hac vice* so that he could represent Defendant Royce. (Doc. 8). Subsequently, Attorney Christopher Powell also entered his appearance on behalf of Defendant Royce. (Doc. 11). On June 29, 2017, the Government moved to Disqualify Attorney Walker on the basis that he also represents Defendant Royce's wife, Heather Royce. (Doc. 14). Attorney Walker opposes this Motion. (Doc. 15). For the reasons that follow, this Court will grant the Government's Motion and disqualify Attorney Walker as counsel for Defendant Royce.

## II. BACKGROUND

In 2014, after selling his tax preparation business, Defendant Royce allegedly obtained a list of clients from another tax preparer and prepared 2013 tax returns for several individuals. (Doc. 1 at ¶ 2). According to the Government, Defendant Royce completed and returned accurate tax returns to his clients but then altered the returns and, using Ms. Royce's Electronic Filing Identification Number, filed the fraudulent tax returns with the Internal Revenue Service. (*Id.* at ¶¶ 3-4; Doc. 14-1 at 1-2). The net result was that Defendant allegedly (1) inflated some of his clients' tax refunds and kept the proceeds and (2) had other clients pay him the taxes they owed, kept the money, and then submitted tax returns indicating that the clients owed no taxes. (Doc. 1 at ¶¶ 4-5).

In 2015, the Internal Revenue Service began investigating Defendant Royce. (Doc. 14-1 at 1). At some point in time, the investigation expanded to include Ms. Royce. (*Id.* at 7; Doc. 15 at 3-4). On April 22, 2016, Ms. Royce retained Attorney Walker to represent her. (Doc. 15 at 1). By that time, Defendant Royce was already being represented by a California based law firm. (*Id.* at 1-2). On June 3, 2016, Ms. Royce, accompanied by Attorney Walker, was interviewed by the Assistant United States Attorney assigned to this case. (*Id.* at 2-3). During the interview, Ms. Royce told the Government that she knew nothing about fraudulent tax returns, that Defendant Royce was mentally incapacitated at the time the tax returns were filed, and that Defendant Royce remains mentally incapacitated. (*Id.* at 3; Doc. 14-1 at 2-3).

In March of 2017, Ms. Royce expressed to Attorney Walker that she did not believe that Defendant Royce's attorneys were adequately representing him and asked if she could retain Attorney Walker on her husband's behalf. (Doc. 15 at 4). After talking with the Government and making his own determination that there was no conflict of interest in representing both Defendant Royce and Ms. Royce, Attorney Walker began representing Defendant Royce on May 4, 2017. (*Id.* at 4-6). Less than two weeks later on May 16, 2017, a federal grand jury returned an indictment against Defendant Royce. (Doc. 1).

### III. Discussion

The Government argues that Attorney Walker should be disqualified as counsel for Defendant Royce because his other client, Ms. Royce, remains under criminal investigation and alternatively may become a witness at Defendant Royce's trial. (Doc. 14-1 at 7-8). Attorney Walker argues that because he is pursuing what he calls the "innocent-spouse defense," no adversarial position will develop between Defendant Royce and Ms. Royce, and, therefore, there will be no conflict of interest in representing both clients. (Doc. 15 at 13-16).

The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The Supreme Court has repeatedly "recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). In turn, "[t]he Sixth Amendment

guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988). "The attorney's undivided loyalty is required because the type of effective 'assistance of counsel' the Sixth Amendment guarantees a criminal defendant is that which puts the government to its proofs in an adversarial manner, and for this counsel free of conflicts of interest is necessary." *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991).

"However, another right is derived from the right to effective assistance of counsel, for 'the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice.'" *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55, 77 L. Ed. 158 (1932)). Nevertheless, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). Thus, "[t]he right to counsel of choice . . . is not absolute," *United States v. Voigt*, 89 F.3d 1050, 1074 (3d Cir. 1996), and the presumption in favor of allowing a criminal defendant his or her choice of counsel "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164.

Even if a defendant waives his or her right to conflict-free representation, it "does not necessarily resolve the matter, for the trial court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver." *Moscony*, 927 F.2d at 749. Further, "because district courts are required to evaluate possible conflicts in the 'murkier pretrial context when relationships between parties are seen through a glass, darkly,'" the Supreme Court has held that district courts should have "'substantial latitude' to take protective steps 'not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.'" *United States v. Self*, 681 F.3d 190, 198 (3d Cir. 2012) (quoting *Wheat*, 486 U.S. at 162, 163).

The Third Circuit has found that "the typical scenario where disqualification becomes necessary entails an attorney's attempt to represent multiple defendants in the same prosecution." *United States v. Stewart*, 185 F.3d 112, 121 (3d Cir. 1999). The Circuit, however, has also "recognized that conflicts arise where a 'defendant seeks to waive his right to conflict-free representation in circumstances in which the counsel of his choice may have divided loyalties due to concurrent or prior representation of another client who is a co-defendant, a co-conspirator, or a government witness.'" *Id.* (quoting *Moscony*, 927 F.2d at 749). Indeed, "[c]onflicts of interest arise whenever an attorney's loyalties are divided, and

5

an attorney who cross-examines former clients inherently encounters divided loyalties." *Moscony*, 927 F.2d at 750 (internal citations omitted).

Finally, "representation that constitutes a breach of professional ethics need not be tolerated," *United States v. Rankin*, 779 F.2d 956, 958 (3d Cir. 1986), and a district court may use the applicable Code of Professional Responsibility as a guide to help determine whether disqualification is appropriate, *see, e.g., Wheat*, 486 U.S. at 160 ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them"); *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978) ("Accordingly, we hold that when a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant"); *United States v. Fumo*, 504 F. Supp. 2d 6, 24-30 (E.D. Pa. 2007) (using the Pennsylvania Rules of Professional Conduct as a guide to rule on a motion to disqualify); *United States v. Stout*, 723 F. Supp. 297, 303 (E.D. Pa. 1989) (same).

Here, the Court is convinced that, if there is not currently a conflict of interest, there is at least a serious potential for a conflict which requires the disqualification of Attorney Walker. According to the Government, Ms. Royce is still under investigation with respect to the charges against her husband and may also be called as a government witness at her

husband's trial.[1] Thus, there is a potential that Ms. Royce will become a co-defendant or, at the very least, a witness whom Attorney Walker may need to cross-examine. Given that it was Ms. Royce's Electronic Filing Identification Number that was allegedly used to submit fraudulent tax returns and that there was an investigation as to whether Ms. Royce had a role in the crime, there is an extremely high likelihood that Attorney Walker's ability to vigorously cross-examine Ms. Royce would be limited by his duty to represent her interests.[2] See *Moscony*, 927 F.2d at 750; *United States v. Massimino*, 832 F. Supp. 2d 510, 515-16 (E.D. Pa. 2011); *Bradford*, 121 F. Supp. 2d at 456.

Also weighing towards disqualification is the fact that Defendant Royce has not waived any potential conflict of interest. Indeed, on multiple occasions in his brief, Attorney Walker asserts that Defendant Royce is presently mentally incompetent. (Doc. 15 at 4, 6-7, 14, 19-20). Attorney Walker further asserts that "it is undersigned counsel's position—and the Government's as well—that Mr. Royce is incapable of entering into such a waiver in a knowingly and intelligent manner." (*Id.* at 14). Thus, even though a waiver would not be

---

[1] The Court notes, however, that the Government has been extremely vague on the details of both the investigation of Ms. Royce and her potential as a witness. Indeed, had the Government provided more details it would likely have made this Court's analysis substantially easier to perform. Nevertheless, for the reasons that follow, the Court has enough information to determine that there is a serious potential for a conflict of interest which requires the disqualification of Attorney Walker.

[2] It is of no moment that Attorney Walker believes that his present defense strategy will not create a conflict. See *United States v. Bradford*, 121 F. Supp. 2d 454, 456 (W.D. Pa. 2000) (rejecting defense counsel's "suggestion that the court base its disqualification decision on a prediction of whether defense counsel's likely strategy will, at trial, result in a conflict," because "'notwithstanding an attorney's pretrial assurances otherwise, a defendant's trial strategy is not fixed.'" (quoting *Stewart*, 185 F.3d at 122)). Nor does it matter that Attorney Walker believes that Ms. Royce will not offer testimony adverse to Defendant Royce at trial. If Ms. Royce is called as a witness and any of her testimony could be construed as adverse, Attorney Walker would be duty bound to, at the very least, "attack the credibility of [Ms. Royce] on any available legitimate basis." *United States v. Cooley*, 243 F. Supp. 2d 329, 332 (W.D. Pa. 2003).

dispositive, Attorney Walker's admitted inability to obtain such a waiver favors disqualification.[3]

On the other side of the scale, Defendant Royce's interest in having Attorney Walker represent him is not as weighty as it would be in most cases. According to Attorney Walker's brief, "in all things legal and medical, Ms. Royce acts as, essentially, Mr. Royce's guardian (i.e. power of attorney), and remains Mr. Royce's primary caretaker." (*Id.* at 4-5). Attorney Walker further explains that Ms. Royce "has also coordinated, and proved to be a pseudo-conduit, to all of Mr. Royce's legal counsel." (*Id.* at 16). Finally, according to Attorney Walker, it was Ms. Royce who retained Attorney Walker on behalf of Defendant Royce. (*Id.* at 4-6). Assuming the truth of these assertions, Attorney Walker is not truly Defendant Royce's choice of counsel, but instead Ms. Royce's choice of counsel for her husband.

Balancing these interests, the Court finds that disqualification of Attorney Walker as Defendant Royce's counsel is the appropriate course of action. *See generally Cooley*, 243 F. Supp. 2d 329 (granting a motion to disqualify despite the fact that the defendant had executed a conflict waiver because attorney had previously represented two individuals that the Government planned to call as witnesses).

---

[3] Although Attorney Walker asserts "that he has exhaustively conferred with both Mr. and Ms. Royce regarding the potential conflict of interest question," (Doc. 15 at 14), this assurance is of little value considering that it is Attorney Walker's position that Defendant Royce cannot understand any conflict enough to knowingly and intelligently provide a waiver.

Further, the fact that the Commonwealth's ethical standards prohibit representation under these facts provides an additional basis for disqualification. Pennsylvania Rule of Professional Conduct 1.7 provides that:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>>
>> (2) the representation is not prohibited by law;
>>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>>
>> (4) each affected client gives informed consent.

Pa. R.P.C. 1.7. For the reasons discussed above, there is cause to believe that representation of Defendant Royce is directly adverse to the representation of Ms. Royce. *See* Pa. R.P.C. 1.7 cmt. 6 ("[A] directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as

9

when the testimony will be damaging to the client who is represented in the lawsuit."). Nevertheless, even if that is not the case, given that Ms. Royce remains under an investigation to ascertain whether she may also be criminally liable for the acts underlying her husband's criminal charges, there is at least a significant risk that the representation of Defendant Royce would be materially limited by Attorney Walker's responsibilities to Ms. Royce.

Thus, because a concurrent conflict of interest exists under (a)(1) or (a)(2), Attorney Walker is prohibited from representing both parties unless he can satisfy all four requirements in subsection (b) of the rule. According to Attorney Walker, however, Defendant Royce is incapable of providing informed consent. (Doc. 15 at 4, 14). Therefore, Attorney Walker cannot meet the requirement of subsection (b)(4) and is consequently prohibited under Rule 1.7 from representing both Ms. Royce and Defendant Royce.

## IV. Conclusion

For the reasons outlined above, this Court will grant the Government's Motion to Disqualify Attorney Walker as Counsel for Defendant. A separate Order follows.

Robert D. Mariani
United States District Judge