THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : 3:17-CR-158 |
| | : (JUDGE MARIANI) |
| DONALD ROYCE, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On May 3, 2017, a federal grand jury returned an indictment, charging Donald Royce with one count of mail fraud in violation of 18 U.S.C. § 1341 and eight counts of preparation and presentation of a false and fraudulent tax return in violation of 26 U.S.C. § 7206(2). (Doc. 1). On June 2, 2017, Defendant was arraigned before Magistrate Judge Karoline Mehalchick and a conditional plea of not guilty was entered on all counts. (Doc. 9). On the same date, Defendant was released pending trial. (Doc. 10).

On September 21, 2018, Defendant filed a Notice of Mental Health Defense. (Doc. 40). On February 5, 2019, based on a report of psychiatrist Dr. Jeffrey A. Danziger, M.D., Defendant filed a Motion to Determine Competency to Stand Trial, requesting a competency hearing pursuant to 18 U.S.C. § 4241. (Doc. 53). The Government filed its own Motion for a competency evaluation, and moved to commit Defendant to the custody of the Attorney General for evaluation pursuant to 18 U.S.C. § 4247(b). (Doc. 57). Pursuant to 18 U.S.C. §§ 4241 and 4247, this Court ordered Defendant committed to the custody of the Attorney

1

General for placement in the Metropolitan Correctional Center (MCC) in New York, New York for the purposes of obtaining a psychiatric or psychological examination to determine his mental competency. (Doc. 63, 67). Defendant voluntarily reported on April 15, 2019.

On May 2, 2019, the Warden at MCC requested additional time to complete the evaluation. (Docs. 68, 71). On May 10, 2019, this Court granted a 9-day extension pursuant to 18 U.S.C. § 4247(b). (Doc. 75). The Competency to Stand Trial Evaluation, written by forensic psychologist Kari M. Schlessinger, Psy.D., Ph.D. and dated May 15, 2019, was filed on May 31, 2019. (Competency to Stand Trial Evaluation ["CST"], Doc. 76). Defendant alleges that despite the conclusion of the evaluation earlier, he was detained until May 24, 2019. (Doc. 88-1, at 3–4).

During a conference call with counsel regarding the findings of the CST, the parties agreed that Defendant is currently incompetent to stand trial and requested a competency hearing. The Court ordered Defendant to file a brief addressing "why, should the court find by a preponderance of the evidence that Mr. Royce is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the Court should not commit the defendant to the custody of the Attorney General in accordance with 18 U.S.C. § 4241(d)." (Doc. 85). The parties have fully briefed the issues. For the reasons set forth below, the Court will schedule an evidentiary hearing regarding Royce's competency pursuant to 18 U.S.C. §§ 4241 and 4247.

## II. ANALYSIS

Dr. Schlessinger's evaluation of the Defendant took place on six different dates totaling approximately thirteen hours. (CST, Doc. 76, at 1–2). Dr. Schlessinger's diagnosis stated, "Given Mr. Royce's history and current presentation, he appears to meet the criteria for the following diagnoses: Unspecified Neurocognitive Disorder, Malingering." (*Id.* at 12). The following prognosis was offered:

> Clinically, Mr. Royce is diagnosed with Unspecified Neurocognitive Disorder and Malingering. He denied a history of mental health treatment and psychiatric hospitalizations. Regarding current symptoms, Mr. Royce stated, "I'm depressed" but denied clinical level symptoms of depression. Mr. Royce reported a history of potential auditory hallucinations, stating he hears voices of his own children laughing. However, he was not able to provide substantial detail about those potential auditory hallucinations, and none were suspected during the present evaluation. Mr. Royce denied a history of substance use. Mr. Royce reportedly suffered a traumatic brain injury in August 2013, when exercise equipment broke and he fell on his head while he was exercising at home. He does not remember many of the details surrounding this event, but reported experiencing significant deficits in the cognitive domains of memory, language, reading, and sustaining attention following this injury. Records from previous psychological and medical evaluations indicated Mr. Royce has previously been diagnosed with Concussion with Loss of Consciousness of 30 minutes or less, complex partial seizures, Cognitive Disorder due to a traumatic brain injury, Major Neurocognitive Disorder due to traumatic brain injury, Psychotic Disorder due to traumatic brain injury, and Psychotic Disorder not otherwise specified. However, Mr. Royce may be exaggerating the extent of his cognitive impairment, as the severity and pervasive nature of his reported cognitive deficits are not consistent with his head injury. Previous records also indicated Mr. Royce has been diagnosed with malingered neurocognitive dysfunction and malingered psychopathology. It is likely Mr. Royce is experiencing some level of genuine cognitive impairment, but is presently exaggerating the severity of such impairment. Given his lack of insight regarding the importance of presenting genuine cognitive and psychological symptoms, the chronic and persistent nature of his difficulties, and lack of

neurocognitive rehabilitation following his reported traumatic brain injury, his prognosis is limited.

(*Id.* at 16).

As to the specific issue of Defendant's competency to stand trial, Dr. Schlessinger administered the Inventory of Legal Knowledge ("ILK")—"a brief, force-choice measure designed to assist in the assessment of response styles of defendants completing evaluations of adjudicative competence." (*Id.* at 19). The report summarized the ILK results as follows:

> He obtained a score of 23 out of 61, which is considered to be within the range of below-chance performance. Mr. Royce's score was considered to be significantly below the range of scores that is expected by chance, providing evidence to suggest a feigned response style. In addition, his score is lower than the ILK scores typically obtained by individuals with genuine mental disorders. Overall, this response style suggests Mr. Royce attempted to feign deficits in legal knowledge. His understanding of and ability to participate in the legal process may be better than what he portrayed during the evaluation. Indeed, this response style is reflective of Mr. Royce's exaggerated response style during the interview for competency to stand trial.

(*Id.* at 19).

Despite the results of the ILK, Dr. Schlessinger reported that Defendant "is experiencing symptoms that would interfere with his ability to understand the nature of his charges, courtroom proceedings, or his ability to consult with his attorney." (*Id.* at 19). The report found Defendant "did not demonstrate an adequate understanding of the adversarial nature of the courtroom proceedings" and "does not appear to have an adequate understanding of how to work with his defense attorney or assist in his own defense." (*Id.* at 18). Dr. Schlessinger opined Defendant "appears to have an impaired ability to form a

4

trusting consultative relationship with his attorney." (*Id.* at 19). Dr. Schlessinger further noted, Defendant "currently appears to demonstrate an inadequate understanding of maintaining proper courtroom behavior, as well as an inadequate ability to attend to and participate in courtroom proceedings." (*Id.* at 20).

Regarding the issue of Defendant's competency to stand trial, the report concluded, "It is the opinion of this evaluator Mr. Royce does not have a rational and factual understanding of the proceedings against him, and he is incapable of assisting counsel with his defense." (*Id.* at 20).

Throughout the report, the evaluator notes that there is evidence to suggest that Defendant is "experiencing some level of genuine cognitive impairment," but also is "presently exaggerating the severity of such impairment." (*Id.* at 20). The report opines, "He appears to be exaggerating the nature of his cognitive deficits in an attempt to avoid returning to court to proceed with his current charges." (*Id.* at 14). However, the report additionally states, "neuropsychological testing indicated Mr. Royce is experiencing severe and global cognitive deficits." (*Id.* at 14). Though the report also explains, "the level of impairment Mr. Royce is reporting on neuropsychological testing and during interviews seems to be inconsistent with the type of traumatic brain injury he sustained." (*Id.* at 14–15).

Despite evidence suggesting Defendant is "exaggerating the severity of his cognitive impairment," Dr. Schlessinger reported, "this does not mean Mr. Royce does not have an underlying neurocognitive disorder; his symptoms may be present, but his exaggeration of

them increases the difficulty of providing a more specific diagnostic picture." (Doc. 76, at 16).

Dr. Schlessinger ultimately offered the following opinions and recommendations "with a reasonable degree of psychological certainty":

> 1. Regarding the issue of Mental Disease or Defect, it is the opinion of this evaluator Mr. Royce currently does not present with a Mental Disease under the law. Mr. Royce currently does present with a Mental Defect under the law, that being Unspecified Neurocognitive Disorder.
> 2. Regarding the issue of Competency to Stand Trial, it is the opinion of this evaluator Mr. Royce currently does not possess a rational and factual understanding of the proceedings against him and does not have the capacity to assist legal counsel in his defense, nor can he rationally make decisions regarding legal strategy.
> 3. If in the wisdom of the Court, Mr. Royce is determined Not Competent to Stand Trial, it is recommended Mr. Royce is committed for a period of restoration to competency, pursuant to Title 18, U.S.C., Section 4241d.
> 4. Based on Mr. Royce's self-report, psychological testing, and presenting symptoms, he appears to suffer from cognitive deficits. However, there is also evidence to suggest Mr. Royce is exaggerating the severity of his cognitive deficits, but no neurological records are available. As such, it is recommended Mr. Royce undergo a complete neurological evaluation that contains brain imaging, which will allow for a more conclusive diagnostic picture.

(CST, Doc. 76, at 21).

Under Section 4241(a), a hearing to determine a defendant's mental competency shall be held "if there is reasonable cause to believe that the defendant may be presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). The hearing, conducted pursuant to Section 4247(d), provides the defendant "an opportunity to testify, to present

evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. § 4241(c); 18 U.S.C. § 4247(d).

Section 4241(d) provides:

> If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility
> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.

18 U.S.C. §4241(d).

The statute's language indicates that upon a finding of incompetency, commitment to the custody of the Attorney General is mandatory. *United States v. Haywood*, 155 F.3d 674, 680 (3d Cir. 1998)("Section 4241 provides a mandatory process."); *United States v. Musto*, No. 3:10-CR-338, 2014 WL 47351, at *6 (M.D. Pa. Jan. 7, 2014)("[T]he Court is bound by the mandatory language of 18 U.S.C. § 4241(d)); *United States v. Ferro*, 321 F.3d 756, 761 (8th Cir. 2003)(collecting circuit cases). Once an individual is found to be incompetent, the district court does not have discretion and must commit him to the custody of the Attorney General. *United States v. Reese*, No. CR 18-39, 2018 WL 4854660, at *6 (E.D. Pa. Oct. 5, 2018); *United States v. Magassouba*, 544 F.3d 387, 404 (2d Cir. 2008)(comparing the discretionary terms of Section 4241(b) ("may order") with the mandatory terms of Section 4241(d) ("shall commit")).

Defendant argues that mandatory detention under Section 4241(d) violates due process because "it does not require that detention be narrowly tailored, i.e. the least restrictive means, to serve a compelling government interest in prosecution." (Doc. 88-1, at 22). Defendant contends that the Court should employ the framework established in *Sell v. United States* and require the government to prove "any less restrictive competency restoration program is substantially unlikely to achieve the same result." (Doc. 88-1, at 18 (citing *Sell v. United States*, 539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003)). Defendant additionally argues that mandatory detention of the Defendant without bail would violate the Eight Amendment's protection against excessive bail. (Doc. 88-1, at 23).

Defendant's argument is unsupported. Defendant does not cite any precedent that would require the application of a heightened standard, such as requiring commitment to be in the least restrictive manner. Defendant provides no case law that this section violates due process. On the contrary, several circuits have established that Section 4241(d) does not violate due process as the time period of the commitment is limited in duration and is reasonably related to serving the purpose of determining whether a defendant's competency can be restored. *United States v. McKown*, 930 F.3d 721, 728 (5th Cir. 2019), *cert. denied*, 206 L.Ed.2d 468 (Mar. 23, 2020); *United States v. Brennan*, 928 F.3d 210, 217–18 (2d Cir. 2019); *United States v. Dalasta*, 856 F.3d 549, 554 (8th Cir. 2017); *United States v. Strong*, 489 F.3d 1055, 1061–62 (9th Cir. 2007); *United States v. Filippi,* 211 F.3d

649, 652 (1st Cir. 2000); *United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir. 1990); *United States v. Shawar*, 865 F.2d 856, 864 (7th Cir. 1989).

Moreover, Defendant's reliance on *Sell v. United States* is misplaced considering the facts of that case are easily distinguished from the instant matter. In *Sell,* the Supreme Court considered whether the Fifth Amendment Due Process Clause permitted the government to involuntarily administer antipsychotic drugs to a defendant facing serious criminal charges in order to render the defendant competent to stand trial. *Sell,* 539 U.S. at 179–80, 123 S.Ct. 2174. The framework developed in *Sell* regarding the involuntary administration of medicine to a defendant is inapplicable to the temporary commitment of a defendant in order to restore his competency. *McKown*, 930 F.3d at 729 (rejecting the application of *Sell* to a Section 4241(d) detention).

Defendant's argument that mandatory commitment violates the Eighth Amendment is similarly unpersuasive. The Supreme Court has held that the right to bail is "not absolute," and "when Congress has mandated detention on the basis of a compelling interest other than prevention of flight...the Eighth Amendment does not require release on bail." *United States v. Salerno*, 481 U.S. 739, 754–55, 107 S. Ct. 2095, 2105, 95 L. Ed. 2d 697 (1987). The Eighth Amendment does not prevent Congress from mandating detention where the government's interest is in "restoring a defendant to competency so the prosecution may move forward." *United States v. Nino*, 750 F. App'x 589, 590 (9th Cir. 2019)(citing *Pate v.*

9

*Robinson*, 383 U.S. 375, 378 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)("[T]he conviction of an accused person while he is legally incompetent violates due process")).

### III. CONCLUSION

Therefore, if, after the evidentiary hearing, the Defendant is found by a preponderance of the evidence to be "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," this Court must commit him to the custody of the Attorney General "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d). For the reasons set forth above, the Court will schedule an evidentiary hearing pursuant to 18 U.S.C. §§ 4241 and 4247 to determine Defendant's competency to stand trial. A separate Order follows.

_____
Robert D. Mariani
United States District Judge