THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,      :
                               :
        v.                     :   3:17-CR-158
                               :   (JUDGE MARIANI)
DONALD ROYCE,                  :
                               :
        Defendant.             :

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Defendant Donald Royce's *pro se* "Motion for Early Termination of Supervised Release Pursuant to 18 U.S.C. § 3583(e)" (Doc. 161), wherein Defendant requests the early termination of his three-year term of supervised release. The parties have briefed the motion (Docs. 161, 163, 165, 166) and the motion is ripe for disposition. For the reasons that follow, Defendant Royce's motion will be denied.

### II. ANALYSIS

"[T]he primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson,* 645 F.3d 191, 197 (3d Cir. 2012)). Congress has thus provided the sentencing court with the authority to terminate a defendant's term of supervised release early. *See Burkey v. Marberry*, 556 F.3d 142, 146 n.3 (3d Cir. 2009) ("Pursuant to 18 U.S.C. § 3583(e), only the sentencing court has the authority to modify [a defendant's] term of supervised release"). Pursuant to 18 U.S.C. §

3583, "[t]he court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). "'The expansive phrases "conduct of the defendant" and "interest of justice" make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.'" *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020) (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).

The § 3553(a) factors cited in § 3583(e)(1) are as follows:

(1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*Melvin*, 978 F.3d at 53 (quoting *United States v. Davies*, 746 F.App'x 86, 88-89 (3d Cir. 2018)). "[I]t is notable that the only traditional sentencing factor *not* relevant to a court's decision of whether to impose supervised release . . . is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment for the offense. . . . This omission reinforces the idea that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." *Murray*, 692 F.3d at 280 (internal quotation marks, citations, and brackets omitted). *See also*, *Esteras v. United States*, 606 U.S. 185, 196 (2025) ("Supervised release . . . is not a punishment in lieu of incarceration. Rather, it fulfills rehabilitative ends and provides individuals with postconfinement assistance.") (internal citations and quotation marks omitted).

When weighing the relevant § 3553(a) factors and considering a defendant's motion for early termination of supervised release, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *Melvin*, 978 F.3d at 53. However, "'*generally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Id.* (quoting *Davies*, 746 F.App'x at 89) (emphasis in *Melvin*).

In the present case, on May 16, 2017, a federal grand jury returned a nine-count Indictment charging Defendant Donald Royce with one count of mail fraud in violation of 18 U.S.C. § 1341 and eight counts of preparation and presentation of a false and fraudulent tax return in violation of 26 U.S.C. § 7206(2). (Doc. 1). On June 2, 2017, pursuant to a Summons, Royce appeared before former Magistrate Judge Karoline Mehalchick for an

initial appearance and arraignment. During the hearing, Royce asserted that he did not understand why he was in Court, did not understand the charges against him, and did not know how to plead. As a result, the Court entered a conditional plea of not guilty on behalf of Defendant and ordered him released with conditions.

Royce filed a "Notice of Mental Health Defense" on September 21, 2018 (Doc. 40). For approximately three years thereafter, Royce underwent several psychological examinations at the separate requests of the Defendant and the Government. On December 13, 2021, following an evidentiary hearing on November 22, 2021, this Court issued a memorandum opinion and order concluding that Defendant was competent to stand trial. (Docs. 122, 123). In finding Defendant competent, the Court relied on expert evaluations concluding that Defendant was malingering, demonstrated "exaggerated" speech deficits, was able to understand and remember information not related to his legal proceedings but was allegedly unable to understand or remember information relating to the legal proceedings, that he presented to evaluating doctors as "alert and oriented", and he had "completely normal" MRI results. (*See generally*, Doc. 122).

On February 23, 2022, a signed plea agreement was filed of record (Doc. 127) and Defendant entered a guilty plea to Count 1 (Mail Fraud in violation of 18 U.S.C. § 1341) and Count 2 (Preparation and Presentation of a False and Fraudulent Return in violation of 26 U.S.C. § 7206(2)) before this Court on March 7, 2022. On January 18, 2023, Defendant Royce was sentenced to a term of imprisonment of 46 months, to be followed by a three-

4

year term of supervised release.  At both hearings, Defendant spoke clearly and

demonstrated an understanding of the proceedings.[1]

Pursuant to the Pre-Sentence Report ("PSR") (Doc. 138), the offense conduct

forming the basis of Defendant's conviction was as follows:

> In 2009, Donald Royce obtained a Pennsylvania Certified Public Accountant's (CPA) license. He operated Royce & Associates, LLC, a tax preparation business which specialized in resolving tax controversy in the Dunmore, Pennsylvania, area. In July 2013, Donald Royce sold his business to H&R Block. Shortly before the sale to H&R Block, Donald Royce took over a private accounting business that previously belonged to Joseph Healey.
>
> In December 2013, Joseph Healey's former clients received a notice that his practice moved to a new address and only cash payments would be accepted for services. Donald Royce concealed the new ownership of Joseph Healey's business by inferring that Joseph Healey moved his business location. Donald Royce knew that Joseph Healey was incapacitated and later died on February 18, 2014.
>
> Donald Royce participated in a scheme that swindled Joseph Healey's clients into paying their Internal Revenue Service (IRS) tax liability directly to him by promising to reduce their income tax liability based on a one-time discount the IRS purportedly offered. Donald Royce instructed five clients to make checks, totaling approximately $187,522, payable to him, intended for further remittance to the IRS. The defendant's intention was to keep his clients' money and not forward the funds to the IRS.
>
> Donald Royce prepared income tax returns for David and Carol Gifford for 2013. He mailed the Gifford's source documents along with their 2013 IRS Form 1040 (U.S. Individual Income Tax Return) reflecting a tax due of $201,890, with the word "COPY" written on the first page to Carol Gifford at 154 Old 21 Road, Waynesburg, PA 15370. Donald Royce also mailed a copy

---

[1] It is also of note that while Defendant used childlike and "caveman" speech when undergoing his psychological evaluation with Dr. Pennuto at FMC - Buttner in April through August of 2021 (see Doc. 116), he submitted a lengthy letter to the Court in advance of sentencing which eloquently and clearly set forth the events of his childhood, his personal and professional relationships and activities, and requested mercy (see Doc. 137, at 57-62).

of IRS Form 1065 (U.S. Return of Partnership Income) in a separate envelope to Carol Gifford. The envelopes were postmarked from Scranton, Pennsylvania, on February 24, 2014, with a return address of "ROYCE, 513 Grandview St., C.S., PA 18411." Carol Gifford was instructed to make a check payable to "Don Royce" for $196,723, so he could obtain a 10% discount on her IRS debt by paying her 2013 tax liability at the local IRS office and Pennsylvania tax office. Donald Royce followed up by sending her a text (Count 1).

Donald Royce also fraudulently prepared income tax returns by using his clients' identities without their knowledge and consent. He caused the fraudulently obtained tax refunds to be deposited into Royce & Associates' business account. The electronic tax returns filed with the IRS did not match the copy Donald Royce provided to his clients. Donald Royce diverted clients' refunds to a transfer bank account to deduct approximately $110,000 in preparer fees after clients paid him for tax return preparation service.

In order to inflate the tax refund on the fraudulently prepared returns, Donald Royce made various false claims, such as misclassifying income as a capital asset to report a loss from the sale of that asset; claiming itemized deductions his clients were not entitled; claiming refundable and non-refundable credits that his clients were not entitled; falsely increasing loss amounts on IRS Form 1040 Schedule C (Profit or Loss From Business); and falsely omitting partnership income on Form IRS 1065 (Counts 2 through 9).

Most victims became aware of an issue when the refund transfer bank sent them a disbursement detail showing the Total Federal Refund Received less deductions for Amount Paid for Tax Preparation Fee. As a result, multiple walk-in referrals were sent to a IRS Criminal Investigations office by Taxpayer Service after the taxpayers' transcripts were reviewed. The IRS determined that Donald Royce intentionally defrauded his clients when he provided them with a client copy of their return which materially differed from the return he filed for each client with the IRS. Donald Royce accepted payments from these clients without remitting the money to the IRS by the statutory due date of April 15, 2014.

Donald Royce returned $110,306 in tax preparer fees six days after he was notified he was the subject of an IRS criminal investigation. These fees were previously deposited into a bank account controlled by Donald Royce who falsely alleged that his Electronic Filing Identification Number (EFIN) was stolen

or compromised. There is no record of Donald Royce reporting the compromised EFIN to the IRS.

In May 2014, two months after Donald Royce was made aware of the criminal investigation, he and his wife purchased a house in Orlando, Florida, for $518,000, partially using money from his clients. Shortly thereafter, Heather Royce filed for divorce from Donald Royce, presumably to protect their assets. In July 2014, Donald Royce transferred the ownership of their house, where they resided with their children, to Heather Royce. In August 2014, the Royces consented to the divorce. They were remarried in less than a year. When they sold their house, the IRS seized the money from the sale.

The total intended loss from Donald Royce's tax scheme is $454,853 which represents unauthorized return preparer fees that Donald Royce took from his clients combined with ineligible credits that he applied to their tax return documents.

(Doc. 137, ¶¶ 8-17).

On or about September 10, 2024, Royce began his three-year term of supervised release. By motion dated August 21, 2025, Royce requested early termination of his supervised release "to be effective on or after September 11, 2025." (Doc. 161). Upon consideration of the relevant statutory factors, it is evident that early termination is not "warranted by the conduct of [Royce] . . . and the interest of justice", 18 U.S.C. § 3583(e)(1). Defendant's motion will thus be denied.

In support of his motion, Royce first asserts that, while incarcerated, he "maintained good conduct with no disciplinary reports" (Doc. 161, at 2). He further advances that he now resides with his wife and two children (Doc. 161, at 3), is employed by a provider of residential solar and HVAC products and is also a "non-credentialed caddy on the PGA golf tour" (*id.* at 3), he is a member of the Faith Assembly Church and volunteers for several

7

non-profit organizations (*id.* at 3), and that he has had no supervised release violations or positive drug screens (*id.* at 3-4).

Although the Court recognizes Royce's good behavior in prison and continued compliance with the terms of his supervised release, such behavior and compliance is nothing more than what is expected of any defendant. Royce's mere compliance with conditions of supervised release does not entitle him to early termination of his term of supervised release. *See e.g.*, *United States v. Laine*, 404 F.App'x 571, 573-574 (3d Cir. 2010) ("Simple compliance with the conditions of supervised release are expected and not exceptional") *abrogated by United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020); *United States v. Welling*, 2021 WL 409834, *4 (W.D. Pa. 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct, is *required* behavior while serving a term of supervised release.") (citing *United States v. Banks*, 2015 WL 926534, at *4 (W.D. Pa. 2015)) (emphasis in original).

Moreover, upon consideration of the nature and circumstances of Royce's offenses, as well as his history and characteristics, it is not in the interests of justice to terminate his supervision early. Royce engaged in an elaborate scheme to defraud his clients and the IRS. He continued to engage in further deceitful behavior following the IRS's commencement of an investigation into his activities and then the filing of an Indictment against him by the Government, culminating in his egregious attempts to convince this Court, various evaluating psychologists, and other participants in his criminal action, that he

8

suffered from severe brain impairments rendering him unable to comprehend the nature of his criminal proceedings.

This Court's reliance on Royce's offense conduct and pre-sentencing conduct as certain factors guiding its determination to deny his motion is not to inflict further punishment. Rather, Royce's prior pre-sentencing conduct, when considered in conjunction with his current motion and briefs, make clear that he fails to understand the gravity of his prior crimes, dishonest behavior, and malingering conduct. This lack of understanding raises a genuine concern that Royce is at a higher chance of recidivism and that he necessitates further supervision by his probation officer. Royce's crimes and pre-sentencing actions were of the intentional variety, uncontributed to by mitigating factors (such as addiction to illicit substances), intended to cheat others, and the likelihood of this behavior to recur, in the absence of continued supervision, cannot be discounted. Continued supervised release is necessary to ensure adequate deterrence to criminal conduct, that Defendant will not resort to the same intentional wrongdoing he previously engaged in, and to ensure that the public is protected from further crimes of fraud and deceit by the defendant. Additionally, Royce's current compliance with the terms of his supervised release and abstention from further criminal conduct since his release from prison may in fact demonstrate the desired deterrent effect of the supervised release on Defendant to refrain from engaging in further unlawful behavior. *See e.g. United States v. Miles*, 2020 WL 4904019, *3 (W.D. Pa. 2020) ("Indeed, the fact of compliance may very well

9

mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community.").

Finally, there is no evidence that "new or unforeseen circumstances" have arisen warranting the early termination of Defendant's supervised release.[2]  At best, Royce asserts that, to develop his career as a PGA caddy, he "will have to travel interstate on short notice and be gone for periods of a week or more" and that his "daughter's athletic endeavors have her traveling to other states for competition." (Doc. 161, at 4).  Royce nonetheless acknowledges that the "Probation Office is prompt in responding to requests for travel", but complains that this still may take "up to 14 days for approval." (*Id.*).  Royce's desire to travel unencumbered by having to give notice to Probation is neither new nor unforeseen.  Royce does not assert that Probation has ever denied one or more of his requests, that he has been unable to continue working as a result of Probation's regulations, or that his attendance is necessary in order for his daughter to participate in her out-of-state competitions.

---

[2] This Court recognizes that the Third Circuit has "disavow[ed] any suggestion that new or unforeseen circumstances *must* be shown", *Melvin*, 978 F.3d at 53 (emphasis added), but it is nonetheless one of a number of factors that this Court should consider in determining the merits of Defendant's motion. *See e.g. id.* ("We think that [g]enerally, early termination of supervised release under § 3583(e)(1) will be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it.  That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. § 3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release.") (some internal citations and quotation marks omitted) (emphasis in original).

For these reasons, and upon consideration of each of the relevant statutory factors, the specific facts and circumstances of this case, and the arguments presented in the parties' briefs, the Court finds that the purposes to be served by the imposition of supervised release by the Court have not yet been satisfied at this time. Consideration of the relevant § 3553 factors weigh in favor of requiring Royce to serve the remaining term of his supervised release. Defendant's motion will therefore be denied.[3]

### III. CONCLUSION

For the foregoing reasons, Donald Royce's "Motion for Early Termination of Supervised Release Pursuant to 18 U.S.C. § 3583(e)" (Doc. 161) will be denied. A separate order follows.

Robert D. Mariani
United States District Judge

---

[3] Although the Court has closely considered each relevant factor, it does not address each factor herein. *See United States v. Sheppard*, 17 F.4th 449, 455 (3d Cir. 2021) ("A district court need not make specific findings of fact for each factor. Rather, when denying a defendant's motion for early termination of supervised release, . . . a statement that [it] has considered the statutory factors is sufficient. Additionally, Congress's inclusion of the 'expansive phrases "conduct of the defendant" and "interest of justice" [in § 3583(e)] make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination.") (internal citations and quotation marks omitted).

11